Good morning, Honorable Members of the Court. My name is Bruce Johnston, for the appellant, and it's Wapato Heritage. It's a well-known name in northern Washington. There was, in fact, a tribe, and Chief Wapato, who is the decedent here, was, in fact, a very prominent member, and his great-grandfather was Wapato John, who received this property by allotment from President Polk, as confirmed by an Act of Congress. In this case, without any regard for substance whatsoever, and on a misapprehension as to the required form of renewal, the United States of America forfeited my client's interests in a 25-year lease on the property of their birthright. The BIA claimed that they determined that the lease was not properly renewed 24 years ago. In fact, notice of the renewal was given and accepted by the BIA. Mr. Johnston, I have the misfortune to have practiced real estate law for 37 years, and the case that you describe and the case that I see in the record are so divergent, I have real difficulty kind of putting it together. You, in this case, the lessors are individuals. The BIA is a governmental entity, and it's supposed to receive some notice as well, but two months before the time to exercise the option expired, your client was advised specifically that the notice was inadequate, and that they had to notify the owners, the other co-owners. You did not do that. Can you tell me why that didn't happen? Yes, Your Honor. That's the most anticipated question in this case. Good. I'm looking forward to the answer. And, Your Honor, my answer is, first of all, the letter of November 30, 2007, from the BIA, very interesting. It quotes only Section 3. It does not indicate what the deficiency is. It says there's some notation that's improper on the notice, and then in one little corner it says, further, nothing in our files indicates that Mr. Evans ever provided notice to the lessors. Okay. That's pretty clear, isn't it? No, I don't believe it is. Why, if the government believed that it was simply a matter of… Why this is a matter of real estate law? If you and I say that you and I are co-tenants, let's say we had some brothers and sisters to boot. Let's just say that we have 10 family members, and we're all co-tenants. Our parents have died. They've left us this property. And you have a lessee, in this case a corporation, which is your client, not an individual, a corporation, to whom the BIA owes no deference, none. And you are supposed to give notice to the lessors. And instead of notifying all 10 of us, we notify two or three. Is that an adequate notice? Your Honor, that is not an analogous, respectfully, situation to what happened here. Why is that? Well, because, Your Honor, Mr. Arch did, when he sent his response to the letter I was mentioning, exactly what the BIA, which had authority to do so, told him to do. Well, counsel, that's actually a question that I had, because you're talking about the December 18th letter? Yes, I am. Let me ask you a question about that, because you're now saying, well, it wasn't, either it wasn't clear what the BIA thought the deficiency was, or that you corrected the deficiency. But the December letter does not ask for clarification, and it does not actually do anything additional. It just argues. And the frustration is that had something else been done on December 18th, it would have still been timely to go through the steps for renewal. Your Honor, as I said, Mr. Arch did exactly what the record in this case shows the BIA asked him to do. Paragraph 63 of Mr. Webb's initial declaration in regard to the first motion says, In that telephone conversation, Gene Nicholson, the head of the BIA, further advised me that all correspondence to the MA-8 Allottees from Wapato Heritage had to go through the Colville agency of the BIA, which would then forward the correspondence to the MA-8 Allottees. And we further then advised Judge Whaley, under 25 CFR 15011B, Mr. Nicholson had the authority to not provide the information as to where and who the Allottees were. He said, Give us the notice. And there's statutory authority. Now, we all know that the regulation that gives the BIA the authority not to give them the names is part of that contract, as if it were set forth in the contract. And what happens here is that creates an ambiguity. The agreement says, Send notice to the Allottees and the BIA will give you their names and addresses. The record says Gene Nicholson refused to give them the addresses and said, Give the notice to us and we will send it on. You cannot communicate with them. We will not give you that information. Now, if that's the case. Did they do that? Did they give the notice to him and ask that he communicate it to the lessors? They gave the information to him and the course of performance as to all the information. No, no. I'm asking you a specific question. Did, with that notice, did they say, Here's what we want you to tell the lessors. Please deliver it to them. Did they do that? What happened is Mr. Arch sent his letter, which indicated the history, also included the original 1985 notice. Which was not delivered to all the lessors. We don't know that, Your Honor. There's nothing in the record that says that. But it's your burden. No, Your Honor. It's not my burden. This was not my motion. The circumstances here is we made a motion to confirm that the lease had properly been renewed. The government made a separate motion. They didn't even put the lease in the record. And when an erroneous Exhibit A that could be read to say that they have to, and that there's no ambiguity in the lease, they knew that didn't exist. And they didn't put it in the record. They never supported it. Their motion. So it was not our burden, Your Honor. It was their burden to show each and every element necessary to their case. And they didn't do it. You're getting on to the litigation portion. I'm pre-litigation at this point, okay? Two months before this period expired, is there any question in your mind if you had sent notice to all of the lessors, we wouldn't even be here? Your Honor, that is possible. It's not impossible. We wouldn't be here, would we? Your Honor, we believe this matter was nothing but a pretext and an element of this case. You have, I think, unwisely castigated the BIA in the kind of brief that I always tell my law clerks, never write pejorative briefs. You have basically maligned the BIA in every respect to make up for what, at least in my view, is a basic real property 101 deficiency. And what I want to know from you is if you had given notice during that two-month period when you were told that the lessors had not been notified, and you had notified every one of them that you were exercising their option, we wouldn't be here, would we? Your Honor, if they hadn't raised any other issue, that is correct. Okay. All right. So at that point, instead of saying, okay, we need to get this clarified. Let's go find out who they are. Let's go to the BIA or wherever we need to go to the title report. Let's go to something and find out who we need to notify. You brought a lawsuit. Your Honor, this was a summary judgment. It's a lawsuit. But the record is that the BIA had told us unequivocally, we won't give them to you. And when we had asked for them not long before, they didn't give them to us. And they said, we will give all the people notice. Aren't we entitled to? Did you do a title search? Your Honor, the title search in this is with the Bureau of Land Management. It's on the records of the computer of the BIA. I understand that. But when you need to know who owns it. I wasn't involved. I don't know. I literally don't know. When you need to know, I'll let you go ahead and talk as long as you want. But if you want to answer my question, you might want to listen to what I'm saying and answer the question. Do you want to talk a little bit? No, Your Honor, I'm running out of time here. Yeah, I think you are. My point is, if you want to know who owns real property, in almost all circumstances, if you go to a title company, can't you find out who owns it on the public records? There wasn't a question of who owned it here. Yes, there was. Because you were saying you didn't know who did. Your Honor, the records, and I would say we have pulled and the BIA produced late, in this case, only a day or so before the summary judgment, the Bureau of Land Management records, which has nothing in it. And that's the point. It has the lease, but no Exhibit A. There's no way to find out. Records are not disclosed. It's very clear, though, is it not, that the BIA is separately listed. It is not the lessor. It is not. So whether there's an Exhibit A or whether there isn't an Exhibit A, at some point the reality is it's very clear under the terms of the lease that the lessors are the owners of the property. And you have to notify the lessors in order to exercise the option to extend. And that's how the lease was written, Your Honor, but that is not how it was signed, and Exhibit A did not exist at all. It doesn't exist in the recorded documents. There is no identification of anyone as a lessor except the BIA in the official records. Whose law applies to the question whether there is substantial compliance with the terms of a lease to renew it? Is that a federal question or a state real property question? Your Honor, because of the nature of this, it's initially a federal question, but the federal law is that they will look to the law of the state. Okay, thank you. Just a quick question. In response to being notified that there was a deficiency in the letter that you point out, and then you had further communication, isn't that correct? There was a letter written by Mr. Arch. In response to that communication. Yes. And in that letter, and in that letter, did you say, would you please advise the owners of the property, the people who you say the BIA, or your position is that the BIA said we'll take care of the notification. Did you in that letter say, you know, in reliance on the fact that you are going to notify these people, would you please do so? Did you say that in the letter? That wasn't specific. No, all I want to do is sort of, yes, I understand that. I mean, I think it is important to answer the question. I mean, did you say that? And if you did, fine. And if you didn't, okay. And then if you didn't, you can tell me why you didn't. Well, Mr. Arch's letter, of course, is in the record. It's part of Doctrine 16.10. And it says what it says. It goes into the manager. It argues with what the BIA had said and just says your position is frivolous, but it doesn't make any effort to deal with. That was my question earlier. It's just, it appears to me not to make any effort to deal with the identified deficiency or to clarify if you didn't know what they meant. Well, there is a follow-up letter. Because the BIA didn't respond. In the follow-up letter, is there a suggestion that the owners are going to be notified? The answer to that, Your Honor, is no, but the BIA did not respond to either letter. I don't believe it is in the context of a summary judgment where the record establishes the BIA had advised. They would not do that. Thank you, counsel. We'll hear from the opposing party at this point. Thank you. Good morning, and may it please the Court. My name is Andrew Biviano. I'm the Assistant United States Attorney in the Eastern District of Washington, and I represent the United States in this matter. I do not have many prepared remarks for the Court this morning, given that your questions to opposing counsel have been covering most topics that I would like to discuss as well, but I stand ready for your questions as needed. I think that, in general, I would address the two broad arguments being made by the appellant, one a legal argument about actual compliance, and the other a more equitable argument about estoppel and substantial compliance, with two facts that decide this case. The first, as the Court discussed at length, is the plain language of the master lease itself, which provides in explicit, unambiguous terms who the lessor is, meaning the landowners. Both were defined explicitly in the first paragraph as well as throughout the lease. Those terms, the term lessor is not used to mean secretary. In fact, in the very renewal provision at issue, which the appellants would like us to follow very closely for the first part of that sentence, regarding the ways in which the lease is renewed, explicitly states that notice must be given to lessor and the secretary. And I don't believe it's any merit to an argument saying follow the first part of that sentence closely and then ignore the second part because it's ambiguous. One has to take them both. And then, of course, the most explicit provision would be the notice provision number 29, explicitly stating that lessor is notified by giving notice to the landowners by certified mail. The only argument that the appellant offers to rebut that is that somehow by failing to attach an exhibit, that has modified the entire language that's still in the contract. So with less than the stroke of a pen, with simply the failure of a stapler, the BIA unilaterally, without notice, modified the contract so as to delete explicit provisions defining who is a party to the contract without even changing the actual terms themselves. What is your response to counsel's argument that there was a request for the current names and addresses and notwithstanding paragraph 29, the secretary did not furnish those names and addresses? Certainly, Your Honor. My response to that has to assume what Mr. Johnson is referring to because I don't think there's a site in the record to where exactly that request was made in response. But my understanding of the record, that occurred according to the appellant in the discussion of the replacement 99-year lease and other negotiations on other matters in which they wanted to communicate with the landowners, again conceding that the landowners were the lessor because there was negotiation with the landowners in that separate matter and there was a request to send it to them and allegedly. But in November, December 2007, the record does not show any request under paragraph 29. Correct. And I have not found any recorded request for addresses of the landowners. That is my main response. I don't see any support for that. And even in the argument made by opposing counsel, the most I can see is that there's an accusation that there was a request made and denied, but even that accusation occurs earlier at a different topic on a different contract and wasn't explicitly made regarding this renewal request. So I don't see how any proof of that and even the unsupported allegation doesn't relate to this matter. The counsel for the Wapato Heritage suggests that the BIA is in effect a plenipotentiary for the lessor. Is there any law, case or statutory or regulatory law that you think would substantiate any portion of that argument? I don't, Your Honor. I don't think there's any law to support that at all. I think first one should turn to the facts of the contracts, the lease, and that's not what the lease says. It explicitly says the lessor is the landowners. As far as any plenipotentiary argument or agency, I think that is completely resolved by the law on the matter, which says even if the BIA is trying to act on behalf of an Indian landowner, they're still not a party to the contract. The cases involving that are the McNabb case from the Federal Court of Claims, the U.S. v. Algoma Lumber Company from the U.S. Supreme Court, and other circuit court decisions that even had the BIA wanted to become a party to this contract, it is not the owner of this land that holds it only in trust and acts as a guardianship entity in some situations and approves the lease, but cannot become the party and replace the landowner. In this particular case, the lessee is an LLC as opposed to a corporation. Are you familiar with any case law, statutory law, regulatory law of any kind that suggests that the BIA owes any kind of fiduciary obligation to an LLC or a corporation? I'm aware of no such law, Your Honor, and I did look. And I think that the reason why no such law exists is because such a premise would be entirely unworkable. The BIA already owns a fiduciary duty, a strong one, to the Indian tribes and to the individual Indian landowners. To have another fiduciary duty to the party contracting with those entities who's opposed to them in an arm's length transaction would be impossible because the duties would clash. And in this particular case, the lessee is neither an Indian nor any entity that's entitled to special treatment by the BIA. No, it is not, Your Honor. The other factual aspect that was already discussed was the letter given, the court has discussed at length. I believe that defeats any equitable argument given that the appellant had actual notice of the deficiency, every opportunity to cure it, a simple day's work and maybe $20, $30 of postage would have been all that's required to save all parties the consequences of this case. Do you know who the counsel was for the LLC at that point? Not current counsel. No, I understand, but do you know who it was at the time? Yes, Mr. Arch. And with that, unless there are further questions, I have concluded my presentation. I don't believe we have any further questions. Thank you. Mr. Johnston, we used a great deal of your time. You may have a minute for rebuttal. Thank you, Your Honor. Mr. Arch is deceased, unfortunately. A couple of things. The notice that was given in 24 years before and acted on and recognized under oath by the BIA as having been effective. We now only look at the CTEC lease to determine the BIA in there says and endorse it. The lease was extended by the notice of 1985. It says right in it. It acknowledges. That's how they treated it. And they were an agent. Agency does apply here to the extent that the BIA couldn't get unanimous agreement among 38 landowners under the applicable statute. So they were authorized to and did act fully as if they were. What statute do you rely upon to say that in a land transaction such as this that the BIA is an agent for the individual owners of this property? They are, in effect, or they stand in loco parentis? It's 25 U.S.C. Section 380, Your Honor. But you still have to have authorization from the principal, do you not? No, you don't. And if we look at the record and the things that were produced in the record in detail, it's very voluminous. But the BIA is required to propose a lease, send out the proposal to the members, and it sends it with a notice that says if we get agreement within 90 days from all of you, okay. So if there's two, if there's four, that's easy. But when there's 38, it's not. The statute then goes on, and the regulations under the statute, and says if the BIA can't get agreement, the BIA gets to do the whole ball of wax. It takes care of it. And that explains why Exhibit A wasn't there, because it took a year and a half to get this lease done, and the BIA couldn't get agreement, couldn't even find some of the people. So the lease was signed by the BIA under that authority as an agent. It couldn't get agreement, so under real estate, normally, if you don't have agreement, you don't have a lease. But in this case, the government has that power and becomes the agent. Now, what's important is, and we discovered from the BIA after the hearing, and submitted to Judge Whaley in the reconsideration, a specific grant of authority from the director to Mr. Nicholson and to the office in Spielem. And it says, you now have authority to sign the lease and to accept any modifications or assignments thereof during its term. Now, that specific authority. Where is that? What document are you referring to? It's referred to in our brief, Your Honor. Is it part of the record? Yes, it is. Oh, absolutely. But what's the site and the record? The site is referred to in Docket 37, Your Honor, as statements of evidence. In this case, under the unique rule in the Eastern District, 56-1 requires us to annotate each and every fact. And Number 37 has the facts that relate to that. Okay, but is there an ER site or an SER site? I believe it's – I'm sorry, Your Honor, I know that it is. The record site is 37 and the exact paragraph within that 10-page document. I do have it here in 10 seconds. I always feel like I'm the craft bird when I'm here, Your Honor. I can find it here. And in that – Counsel, perhaps you can just leave a notation with the Deputy Clerk after the argument. I'd be happy to do that. But that authority wasn't indicated to us in the first motion. It was unavailable. It was new evidence. And the position that was taken by the government was, they didn't have authority to modify, they didn't have authority to do anything. In fact, that was a misrepresentation. And I didn't mean that to be a pejorative, but I believe that it was a misrepresentation because they had in their hand a director's letter giving them the authority to do what they have done and to accept we submit a modified notice, particularly given their statutory authority to not use the notice. Thank you, Counsel. Thank you, Your Honor. We appreciate the arguments of both counsel in this very interesting case. And the case is now submitted. And at your convenience, you can just leave a notation with Ms. Brebner and she can pass it along to us and to opposing counsel.
judges: Breyer, Graber, Smith M.